UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MURPHY MEDICAL ASSOCIATES, LLC, *et al.*, *Plaintiffs*, | ) ) ) | CASE NO. 3:22-cv-00064 (KAD) |
| v. | ) ) | |
| 1199SEIU NATIONAL BENEFIT FUND, *Defendants*. | ) ) | MARCH 24, 2023 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO DISMISS (ECF NO. 17)**

Kari A. Dooley, United States District Judge:

This case involves the alleged failure by the 1199SEIU National Benefit Fund ("the Fund" or "Defendant") to pay Plaintiff for COVID-19 testing they performed for the Fund's participants. Plaintiffs Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, and Steven A.R. Murphy ("Murphy Medical" or "Plaintiff") allege violations of the Families First Coronavirus Response Act ("FFCRA") and Coronavirus Aid, Relief and Economic Security Act ("CARES Act"), the Employee Retirement Income Security Act of 1974 ("ERISA"), the Connecticut Unfair Insurance Practices Act ("CUIPA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and also assert claims of unjust enrichment and breach of contract. Defendant moves to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) on a variety of bases. Plaintiffs oppose the motion to dismiss but seek leave to replead if the Court finds the allegations inadequate to state their claims. For the following reasons, the motion to dismiss is GRANTED. However, the dismissal is without prejudice as to the ERISA claim in Count Three, and Plaintiff is permitted to file an Amended Complaint as detailed below.

1

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint…documents appended to the complaint or incorporated in the complaint by reference, and…matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations and internal quotation marks omitted).

**Factual Allegations**

In the face of a global pandemic, Congress passed two statutes to make COVID-19 tests readily available. FFCRA and the CARES Act generally require health plans to cover and reimburse providers for COVID-19 testing and related services—and important here—to do so

without cost sharing, deductibles, copayments, coinsurance, and other medical management requirements. Compl. ¶¶ 2, 23–25.

Murphy Medical was one provider that began operating COVID-19 testing sites in Connecticut and New York in March 2020. *Id.* ¶ 30. Murphy Medical took patient samples by nasal swabs and sent those samples to their lab or a third-party lab for processing. *Id.* ¶ 35. All swabs of the Fund members or beneficiaries were processed by Murphy Medical's internal laboratory. *Id.* ¶ 54.

Thereafter, Murphy Medical purchased a Biofire Film Array System which could test for COVID-19 and "other respiratory viruses and infections that could possibly cause the same or similar symptoms as COVID-19." *Id.* ¶¶ 38, 41. Murphy Medical used the Biofire Film Array System in its internal lab to analyze samples and produce results faster than third party labs. *Id.* ¶ 43. Murphy Medical also conducted medical histories and basic examinations on patients who sought COVID-19 tests, as well as telemedicine services. *Id.* ¶¶ 45–46.

Murphy Medical generally receives assignment of benefit forms from patients who receive testing at their sites, or if the patients registered online, Murphy Medical received the forms electronically. *Id.* ¶ 50. Murphy Medical performed testing or related services for the Fund's members and beneficiaries in the amount of $633,781.00, totaling over 490 claims. To date, the Fund has reimbursed Murphy Medical approximately $57,153.00. *Id.* ¶¶ 56–57. When prompted by counsel, the Fund either ignored or failed to engage in a "meaningful dialogue" with Murphy Medical regarding an explanation of claim denials, and instead, continued to deny claims or send marginal reimbursement. *Id.* ¶ 59. Murphy Medical has attempted to appeal every claim that the Fund denied, but those attempts have been summarily denied without any investigation into the claims. *Id.* ¶¶ 60, 62.

**Discussion**

<u>Federal Claims</u>

*Count One: FFCRA and CARES Act*

Murphy Medical alleges that the Fund violated FFCRA and the CARES Act by failing to reimburse Murphy Medical for COVID-19 testing and related services it performed for the Fund's members and beneficiaries because a "health plan is obligated to pay the provider its cash price for providing those services" if the parties have not otherwise negotiated a rate. *Id.* ¶¶ 74–76. The Fund seeks dismissal of this claim insofar as FFCRA and the CARES Act do not provide a private cause of action for healthcare providers. In response, Murphy Medical argues that the Court should find an implied private cause of action in this legislation. The Court does not write on a blank slate. Several district courts, including two in this district, have examined this issue and rejected the invitation to read a private cause of action into FFCRA and the CARES Act. The Court agrees with these courts, and particularly, the well-reasoned decisions of Judge Arterton and Judge Bryant (which involve substantially the same plaintiffs as those in this case).

Generally, "private rights of action to enforce federal laws must be created by Congress." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Such a private right of action may be provided for expressly, "or, more rarely, by implication." *Id.* To determine whether an implied private right of action exists, courts consider "the text of structure of the statute." *Id.* The court must determine whether Congress intended to imply "not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 288 n.7. In *Cort v. Ash*, the Supreme Court set forth factors for courts to examine in making this inquiry:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply

4

> such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78 (1975).

As examined by numerous courts, the language of Section 6001 of FFCRA and Section 3202 of the CARES Act, considering the *Cort* factors, reveals no intent on the part of Congress to afford health care providers a privately enforceable remedy for the failure to pay claims for COVID-19 testing and related services. *See, e.g.*, *Murphy Medical Associates, LLC v. Cigna Health and Life Ins. Co.*, No. 3:20-cv-1675 (JBA), 2022 WL 743088, at *2–*6 (D. Conn. Mar. 11, 2022) ("[N]either § 6001 of the FFCRA nor § 3202 of the CARES Act contains a private right of action."); *Murphy Medical Associates, LLC, et al. v. Centene Corp., et al.*, No. 3:22-cv-504 (VLB), 2023 WL 2384143, at *6–*7 (D. Conn. Mar. 6, 2023) (same); *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, No. 22-cv-1696 (JSC) *et al.*, at *2–*4 (N.D. Cal. June 23, 2022) (same); *Horvath v. JP Morgan Chase & Co.*, No. 3:21-cv-1665 (BTM), 2022 WL 80474, at *5 (S.D. Cal. Jan 7, 2022) (same); *Betancourt v. Total Prop. Mgmt.*, No. 1:22-cv-33 (JTL), 2022 WL 2359286, at *3 (E.D. Cal. June 30, 2022) (same); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400 (SRN), 2022 WL 4357542, at *10 (D. Minn. Sept. 20, 2022) (same); *Saloojas, Inc. v. Blue Shield of Cal. Life and Health Ins. Co.*, No. 22-cv-3267 (MMC), 2022 WL 4843071, *1 (N.D. Cal. Oct. 3, 2022) (same); *America Video Duplicating, Inc. v. City Nat'l Bank*, No. 2:20-cv-4036 (JFW), 2020 WL 6882735, at *4–5 (C.D. Cal. Nov. 20, 2020) (same). The only decision the Court is aware of where a district court did find an implied private right of action, *Diagnostic Affiliates of Northeast Hou, LLC v. United Healthcare Services, Inc.*, No. 2:21-cv-131 (NGR), 2022 WL 214101 (S.D. Tex. Jan. 18, 2022), has since been disavowed by the same court that issued it. *See Diagnostic Affiliates of Northeast Hou, LLC v. Aetna, Inc.*, Civil Action No. 2:22-CV-00127, 2023 WL 1772197, at *9

(S.D. Tex. Feb. 1, 2023) ("This Court thus disavows its decision in *United* insofar as it allowed the FFCRA/CARES Act claim to survive a Rule 12(b)(6) challenge and, joining its sister courts, HOLDS that the FFCRA/CARES Act does not carry with it an implied private cause of action to enforce its terms."). This Court agrees with both the reasoning and conclusions of these cases.[1] The motion to dismiss as to Count One is GRANTED, and the claim is dismissed **with prejudice**.

*Count Two: ACA*

The Fund next asserts that dismissal of Count Two is appropriate because the ACA does not provide a private cause of action. At oral argument, Murphy Medical conceded this argument. The motion to dismiss as to Count Two is GRANTED, and this claim is dismissed **with prejudice**.

*Count Three: ERISA § 502(a)(1)(B)*

The Fund next challenges the ability of Murphy Medical to assert claims based on their patients' right under their benefit plans and ERISA. The Fund argues, *inter alia,* that Murphy Medical failed to exhaust their administrative remedies under ERISA.[2]

While ERISA does not contain an administrative exhaustion requirement, "the federal courts—including this Circuit—have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989

---

[1] The Court also agrees with Judge Bryant that two congressional letters drafted after the enactment of FFCRA and the CARES Act do not support the conclusion that Congress intended to create a private right of action for providers seeking reimbursement for COVID-19 testing. *See Murphy Medical Associates,* 2023 WL 2384143, at *7 ("Nowhere in this letter does it express any implied intent by Congress to create a private right of action for those providers. Rather, the letter appears to suggest the contrary is true, because it is directed to the Department heads and 'urges [them] to take immediate action.'…If these members of Congress believed that health care providers had a private cause of action, there is no reason for them to ask the Department heads to take action to enforce the rights of providers.").

[2] The Fund does not challenge the adequacy of Murphy Medical's allegations regarding their status as an assignee of benefits and therefore their standing to bring ERISA claims pursuant to Section 502(a)(1). The Fund does challenge the sufficiency of the allegations regarding the assignment of benefits as they relate to Count Four, which purports to advance an ERISA claim under Section 502(a)(3). As the Court dismisses Count Four with prejudice for the reasons discussed below, it does not address the adequacy of the assignment allegations herein.

F.2d 588, 594 (2d Cir. 1993)). A plaintiff must pursue "those administrative [processes] provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594. While the failure to exhaust administrative remedies is an affirmative defense and does not deprive a court of subject matter jurisdiction, *see Paese*, 449 F.3d at 446, courts have nevertheless dismissed claims where plaintiffs fail to plead, or plead only in conclusory fashion, that they have exhausted their administrative remedies. *See Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 608–09 (S.D.N.Y. 2009) (collecting cases concluding that the allegation that "all conditions precedent including the exhaustion of administrative remedies to maintaining this action have been performed or have occurred or are futile" was insufficient to withstand a motion to dismiss).

The Fund's exhaustion policy is as follows:

> **NOTE:** All claims by you, your spouse, your children or your beneficiaries against the Benefit Fund are subject to the Claims and Appeal procedure. No lawsuits may be filed until all steps of these procedures have been completed by you or a representative authorized by you, and the benefits requested have been denied in whole or in part.

*See* ECF No. 18-3, 2021 Summary Plan Description ("SPD" or the "Plan"), at 170. The Plan also includes instructions on how to appeal and time limitations for doing so. [3] Where a plaintiff fails to exhaust administrative remedies before filing an action in federal court, an ERISA cause of action must be dismissed. *See Neurological Surgery P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 293 (E.D.N.Y. 2011); *see also Leak v. CIGNA Healthcare*, 423 F. App'x 53, 53–54 (2d Cir. 2011).

Notwithstanding, a plaintiff can overcome the administrative exhaustion requirement through a "clear and positive showing that seeking review by [the defendant] would be futile."

---

[3] The Plan instructs members to complete a Benefit Fund Appeal Representation Authorization Form to authorize a Non-participating Provider to appeal on a member's behalf, as well as provides the timeframe for administrative review and appeal. *See* 2021 SPD at 175–76. The Complaint makes no reference to this Form nor whether it was submitted on any member's behalf.

*Kesselman*, 668 F. Supp. 2d at 609. The purpose of the exhaustion requirement is to "help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy*, 989 F.2d at 594 (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). Accordingly, if a plaintiff's participation in a formal administrative process would be futile, these purposes are "no longer served," and "a court will release the claimant from the requirement." *Id.* The futility exception "is not applied lightly." *Neurological Surgery, P.C.* v. *Northrop Grumman Sys. Corp.*, No. 2:15-cv-4191 (DRH), 2017 WL 389098, at *6 (D. Conn. Jan. 26, 2017) (emphasis removed) (quoting *Zupa v. Gen. Elec. Co.*, No. 3:16-cv-217 (CSH), 2016 WL 3976544, at *2 (D. Conn. July 22, 2016)); *see also Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2011) ("The standard for demonstrating futility is very high, and Plaintiffs seeking to make such a showing face a heavy burden") (internal quotation marks and citations omitted).

      Here, the Fund has set forth the requirements of the exhaustion process. The Complaint lacks sufficient allegations that speak to efforts by Plaintiff to comply with these requirements. The Complaint likewise fails to plausibly allege that exhaustion would be futile. Rather, Murphy Medical summarily asserts that it "appealed every claim submitted to the Fund"[4] and therefore "any available administrative remedies are deemed exhausted." Compl. ¶¶ 4, 115. These allegations are insufficient to withstand a motion to dismiss. *Kesselman*, 668 F. Supp. 2d at 609 ("It is well established that ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion.") (citing cases).

---

[4] Plaintiff, in other sections of the Complaint, refers to "attempted" appeals. Compl. ¶¶ 60, 62. The Court notes that it would be impossible for Defendant to deny "attempted" appeals. The conclusory, generic allegation that Plaintiff "appealed every claim" does not provide a basis of futility—the only way Plaintiff can circumvent the Fund's mandatory appeals process.

And to the extent that Plaintiff urges the Court to find that it has adequately alleged that it should be excused from an exhaustion requirement due to Defendant's alleged ERISA violations, the allegations, again mere conclusions, are insufficient in this regard. *See* 29 C.F.R. § 2560.503-1(I)(1) (when a plan fails to "follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a)…").

The motion to dismiss as to Count Three is GRANTED.[5] The dismissal is **without prejudice** to allow Murphy Medical to file an Amended Complaint to address the deficiencies identified herein with respect to the ERISA claims. Any Amended Complaint must include allegations regarding the manner in which Murphy Medical has exhausted its administrative remedies or the factual bases for a claim that it should be excused from doing so.[6]

*Count Four: ERISA Section 502(a)(3)*

Defendants argue that Count Four, which is purportedly brought pursuant to Section 502(a)(3), is unavailable where they are redundant claims brought under Section 502(a)(1). At oral argument, Murphy Medical conceded this point. The motion to dismiss as to Count Four is GRANTED, and the claim is dismissed **with prejudice**.

State Law Claims

*Count Five: Unjust Enrichment*

---

[5] The Fund also argues that Plaintiff has not adequately alleged that the tests were medically necessary as required under the terms of the Plan. Construing the allegations in Plaintiff's favor, the Court disagrees. While this issue might ultimately doom Plaintiff's case, at this juncture, given the nature of the pandemic and the rapidly changing understanding of the virus, the issue of medical necessity is adequately alleged, even if only by inference.

[6] The Court does not take up all the alternative bases upon which Defendant seeks dismissal. However, if Plaintiff intends to file an Amended Complaint, it should examine carefully whether the Plan provisions allegedly breached are adequately identified in the Complaint, as well as the sufficiency of the allegations regarding the assignment of plan benefits to Murphy Medical.

9

The Fund argues that the claim of unjust enrichment should be dismissed because it is preempted by ERISA, and that Murphy Medical has failed to plead facts sufficient to support the claim. Murphy Medical disagrees.

The Second Circuit has recognized that the interaction between express preemption under ERISA Section 514 and the common law presents "a more nuanced question than a literal reading of the text [of § 514] would imply." *Aesthetic & Reconstructive Breast Cntr., LLC v. United HealthCare Group, Inc.*, 367 F. Supp. 3d 1, 7 (D. Conn. 2019) (referring to *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008). Under Section 514 of ERISA, common law claims which "seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA'" are expressly preempted. *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).

As to this claim, Plaintiff argues that the obligation to pay Murphy Medical derives from the CARES Act, and so does not "relate" to a claim for benefits under ERISA. The Court disagrees and rejects the suggestion that the CARES Act provides a basis for an implied contract between health care providers and insurers. The legislation does not purport to establish any contractual rights between insurers and medical providers, implied or otherwise. To accept this argument would be to provide an end run around the conclusion reached above, and by many other district courts, that there is no private right of action in the CARES Act.

Finally, Murphy Medical has not adequately alleged unjust enrichment. Courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to the insureds. *See e.g.*, *MC1 Healthcare, Inc. v. United Health*

*Groups, Inc.*, No. 3:17-cv-1909 (KAD), 2019 WL 2015949, at *10–*11 (D. Conn. May 7, 2019) (collecting cases).

> It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.

*Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001). Although the Fund is not an insurance company *per se,* the same reasoning applies. The motion to dismiss Count Five is GRANTED, and the claim is dismissed **with prejudice**.

*Count Six: Breach of Contract*

Murphy Medical also asserts a breach of contract claim, alleging that the Fund refuses to make a payment on the balance it owes to them. Compl. ¶ 143. The alleged conduct concerns the Fund's failure to provide benefits to Murphy Medical pursuant to the ERISA benefit plan. This claim does not seek to rectify a violation of any legal duty independent of ERISA.[7] Consequently, any claim for breach of contract is preempted by ERISA. *See Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248, 260 (D. Conn. 2002) (finding plaintiffs' claims for breach of contract, unjust enrichment, and fraud are preempted by ERISA).

The motion to dismiss Count Six as to Murphy Medical's breach of contract claim is GRANTED, and the claim is dismissed **with prejudice**.

*Count Six (sic) and Seven: CUIPA/CUTPA*

First, at oral argument, Murphy Medical conceded that the CUIPA count should be dismissed, as CUIPA does not provide a private cause of action. Thus, Count Six is dismissed **with prejudice.** Murphy Medical further conceded that the Fund does not meet the definition of an

---

[7] As indicated above, the Court rejects Plaintiff's suggestion that the CARES Act provides a basis for the breach of contract claim.

11

"insurer" for purposes of the CUIPA statute. Accordingly, Count Seven, which purports to bring a CUTPA claim based upon a CUIPA violation is also dismissed **with prejudice.**[8] *See Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 624 (2015) ("the failure of the CUIPA claim is fatal to the CUTPA claim.")

**Conclusion**

For the foregoing reasons, the Fund's motion to dismiss (ECF No. 17) is GRANTED. The dismissal of Count Three is without prejudice to the filing of an Amended Complaint as detailed above. All other claims are dismissed **with prejudice.** Plaintiff may file an Amended Complaint on or before **April 14, 2023**. The failure to file an Amended Complaint will result in dismissal of this action with prejudice as to all claims without further notice from the Court. The Court further advises Plaintiff that if an Amended Complaint is filed, the Court will issue an Order to Show Cause as to why this matter should not be transferred to either the Southern or Eastern Districts of New York by virtue of the forum selection provisions of the Fund's Plan.

**SO ORDERED** at Bridgeport, Connecticut this 24th day of March 2023.

/s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[8] The Court also observes that a CUTPA claim is preempted when it arises from the denial of benefits under an ERISA plan. *Paneccasio* 532 F.3d at 114 (A CUTPA claim premised on the termination of an ERISA benefit plan that resulted in the denial of benefits under the plan was preempted); *see also Woods v. Unum Life Ins. Co. of Am.*, No. 3:09-cv-809 (SRU), 2011 WL 166205, at *3 (D. Conn. Jan. 19, 2011) (finding CUTPA and CUIPA claims preempted by ERISA where plaintiff alleged that his insurer "wrongly denied his application for long-term disability coverage"). Accordingly, the motion to dismiss may be properly granted on this basis.